UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KENNETH BLACK,

        Plaintiff,

v.

AFNI, INC.,

        Defendant.

**OPINION**

Civ. No. 15-cv-1176 (WHW)(CLW)

**Walls, Senior District Judge**

Plaintiff Kenneth Black alleges that Defendant AFNI, Inc. violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by repeatedly calling his cell phone in an attempt to collect a consumer debt. Defendant moves for summary judgment. Decided without oral argument under Fed. R. Civ. P. 78, Defendant's motion is denied.

**FACTUAL AND PROCEDURAL HISTORY**

The facts of this case have been set out in this Court's earlier Opinion, ECF No. 19, and need not be repeated here. Briefly, Plaintiff complains about a number of phone calls made to him by Defendant between October and December of 2014. The calls were made to Plaintiff's home telephone, which were then forwarded to his cellular phone. SMF ¶ 46. Defendant was attempting to reach an unaffiliated third party, but inadvertently placed the calls to Plaintiff's home telephone due to inaccuracies in Defendant's internal records. *Id.* ¶¶ 45, 75. Plaintiff never spoke with anyone from AFNI, nor did he notify anyone that the phone number no longer belonged to the unaffiliated third party. *Id.* ¶¶ 81, 83.

The parties dispute the number of times Defendant called Plaintiff's phone number during the relevant time period. Telephone company records show ten specific calls that Plaintiff received from a phone number affiliated with Defendant. SMF ¶ 38. Defendant maintains that the ten phone calls identified in the phone records are the only calls it placed to Plaintiff's phone number during the time period in question. Def's. Br. at 20. However, Plaintiff contends that Defendant called him three to four times a week from October to December 2014. Pl's. Br. at 18, ECF No. 37. At his deposition, Plaintiff testified that the ten calls reflected in the phone records do not represent all of the calls he received from Defendant in that time. Pl's. Br. at 18; *see* Black Dep. ¶¶ 53:1–4.

Plaintiff brought this action on February 17, 2015 and filed an amended complaint on July 15, 2015 asserting claims under Sections 1692d and 1692g of the FDCPA. ECF No. 6. Defendant moved for summary judgment on April 27, 2016 arguing that (1) Plaintiff had not established that AFNI was attempting to collect a "debt," and (2) that the frequency of the alleged calls is insufficient to establish an attempt to harass. Mot. for Sum. Judg., ECF No. 11.[1] This Court denied the motion in part and stayed for further discovery. 2016 Opinion, ECF No. 19.

In the 2016 Opinion, this Court granted further discovery on whether Defendant was making the calls to collect a "debt" as required by the FDCPA. *Id.* at 5. Specifically, this Court granted further discovery as to the nature of the debt owed by the unaffiliated third party.

This Court went on to reject Defendant's second argument that the number and nature of calls Defendant placed to Plaintiff during the relevant period are not sufficient to establish a violation of the FDCPA. *Id.* at 8. The Court stated that "[v]iewing th[e] evidence in the light

---

[1] Defendant also contended that Plaintiff was not obligated to provide notice to Black under 1692g, which Plaintiff did not oppose.

most favorable to Plaintiff, a reasonable jury could conclude that AFNI caused Black's phone to ring with the intent to annoy, abuse, or harass." *Id.* at 8–9.

Following the 2016 Opinion, the parties conducted further discovery. Defendant identified that the unaffiliated third party was an adult male whose debt had been placed with AFNI for collections. Interrogatory No. 4, ECF No. 38-3. Defendant's internal notes show that the adult male originally owed the debt to DirecTV, and the address listed on the account is a residential property in Orange, New Jersey. RSMF ¶ 97; AFNI Acct. Notes, ECF No. 38-5. DirecTV is a satellite television provider. RSMF ¶ 101.

On June 23, 2017, Defendant again moved for summary judgment. ECF No. 32. Defendant raises the same two arguments as in its earlier motion: (1) that Plaintiff has not demonstrated that AFNI was attempting to collect a debt; and (2) that Plaintiff cannot establish a violation of Section 1692d or 1692d(5) as a matter of law. Plaintiff filed a response in opposition on July 21, 2017, and Defendant filed a reply brief August 1. ECF Nos. 36, 40. This Court has jurisdiction under 28 U.S.C. § 1331.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott,* 550 U.S. at 380. At this stage, the Court's "function is not . . . to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, and it is "inappropriate for a court to . . . make credibility determinations." *Big Apple BMW, Inc. v. BMW of North Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## DISCUSSION

The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). A plaintiff bringing an FDCPA claim must show that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). The Act is limited to "consumer debt," defined as those debts "arising out of

4

. . . transaction[s]" that are "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Heintz*, 514 U.S. at 293.

Under 15 U.S.C. § 1692d, a debt collector may not engage in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The statute enumerates, without limitation, certain acts which are a violation, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

"Because the FDCPA is a remedial statute, the Third Circuit has construed its language broadly so as to give effect to its purpose." *Grubb v. Green Tree Servicing, LLC*, No. CV 13-07421 (FLW), 2017 WL 3191521, at *4 (D.N.J. July 27, 2017) (quoting *Brown v. Card Serv. Center*, 464 F.3d 450, 453 (3d Cir. 2006)). Consistent with "basic consumer-protection principles," *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996), courts analyze lender-debtor communications from the perspective of an objective "least sophisticated debtor." *Brown*, 464 F.3d at 454. "Applying this standard gives effect to 'the basic purpose of the FDCPA: . . . to protect all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious, from abusive debt collection practices.'" *Grubb*, 2017 WL 3191521, at *4 (quoting *Brown*, 464 F.3d at 454).

A. **<u>Plaintiff has introduced sufficient evidence that Defendant was attempting to collect a debt.</u>**

Defendant argues that Plaintiff fails to establish that AFNI was attempting to collect a "debt" as defined by the FDCPA. Def's. Br. at 12. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Because the FDCPA seeks to protect consumers, its requirements and proscriptions do not extend to financial obligations arising out of commercial or business transactions.

To determine whether an outstanding obligation is a "debt" for purposes of the FDCPA, the question is the "nature of the transaction giving rise to the obligation and not the nature of the assets used to satisfy it." *Ross v. Panteris & Panteris, LLP*, No. 12-6096 (FSH), 2013 WL 5739145, at *10 (D.N.J. Oct. 22, 2013) (quoting *Dolente v. McKenna*, No. CIV. A. 95-7142, 1997 WL 117001 (E.D. Pa. Mar. 11, 1997)). The Third Circuit has explained that under Section 1692a(5), a "debt" is created "whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family, or household purposes." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 401 (3d Cir. 2000). Accordingly, "[t]he FDCPA applies to all obligations to pay monthly bills which arise out of consensual consumer transactions." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 233 n.8 (3d Cir. 2005) (citing *Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980)). In *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 401 (3d Cir. 2000), the Third Circuit held that home water and sewer obligations were "primarily for personal, family, or household purposes." *See also Piper*, 396 F.3d at 232–33. Similarly, the Second Circuit has held that bills for back rent were "debts" because the services at issue were used "primarily for personal, family, or household purposes." *Romea v. Heiberger & Assocs.*,

163 F.3d 111, 116 (2d Cir. 1998); *see also Berrios v. Sprint Corp.*, No. CV-97-0081 (CPS), 1998 WL 199842 at *10 (E.D.N.Y. Mar. 16 1998) (certifying class action under FDCPA for phone bills, reasoning that "there is a substantial likelihood that these account holders used their accounts primarily for personal, family, or household purposes").

In contrast, courts have held that bills are not "debts" under the FDCPA when the obligation arises out of a transaction that may be commercial in nature. As example, because credit cards can and are used for commercial and business purposes, courts will not assume that credit card debt is "debt" under the FDCPA absent evidence that the card was limited to personal uses. *Boosahda v. Providence Dane*, 462 F. App'x 331, 336 (4th Cir. 2012); *Matin v. Fulton, Friedman & Gullace LLP*, 826 F. Supp. 2d 808, 812–13 (E.D. Pa. 2011); *see Ross*, 2013 WL 5739145, at *11 (credit card debt not for "personal, family, or household purposes" when terms of credit card agreement said that card was to be used only for "commercial or business purposes" and there was no evidence of personal use).

Defendant contends that Plaintiff has failed to identify the third-party individual from whom AFNI was trying to collect, and was not able to obtain any additional information about his outstanding obligations. Defendant therefore argues that Plaintiff has not introduced sufficient evidence that the debt was for "personal, family, or household purposes."

Plaintiff responds that circumstantial evidence adequately demonstrates that the debt is a personal or family debt for personal television service for the residents of a home in Orange, New Jersey. Pl's Br. at 16.

The Court finds that Plaintiff has introduced sufficient evidence from which a reasonable jury could conclude that the debt arose out of a transaction whose subject is "primarily for personal, family, or household purposes." There is little doubt that a bill for home television

services is a "monthly bill which arises out of a consensual consumer transaction." *Pollice*, 225 F.3d at 400–01. Like water, sewer services, and rent, satellite television is a domestic service, predominantly used within the home for noncommercial purposes. *See id.* Unlike credit card debt, individuals rarely purchase television services for business or commercial purposes. Further, television service can only be used in a single location, and that location is frequently a home.

Here, Plaintiff has introduced evidence that the obligation was a DirecTV bill, that the obligation was owed by an individual, and that the bill was directed to a residential address. From this, a reasonable juror could conclude that the obligation arose out of a transaction between an individual and DirecTV for provision of home television services for the residential address listed on the bill.

Relying on *Anderson v. AFNI, Inc.*, No. 10-4064, 2011 WL 1808779 at *14 (May 11, 2011) *abrogated on other grounds, as recognized in Leyse v. Bank of America National Association*, 804 F.3d 316 (3d Cir. 2015), Defendant argues that Plaintiff must introduce more specific evidence about the use of the television services to allow a jury to infer that it was primarily used for "personal, family, or household purposes." In *Anderson*, the debts at issue were cell phone accounts that were fraudulently obtained by an identity thief. *Id.* at *1. The plaintiff argued that the court should infer that the debts were for "personal, family, or household purposes" because "(1) [Plaintiff] is an individual; (2) the address associated with the debts at issue are 'residential,' and (3) [Defendant] treated those debts as if they were consumer debts." *Id.* at *14. The court rejected these arguments, reasoning that "individuals may—and often to—carry on commercial activities from residential settings." *Id.*; *see also Matin*, 826 F. Supp. 2d at 812–13 (finding plaintiff failed to establish that credit card debt was "primarily for personal,

family, or household purposes" when the only evidence introduced was the use of a residential address). Defendant argues that this Court should similarly reject Plaintiff's reliance on the fact that the bill was directed to an individual and a residential address.

However, *Anderson* is inapposite. While individuals may "carry out commercial activities from residential settings," *Anderson*, 2011 WL 1808779, at *14, individuals rarely, if ever, use DirecTV services to carry out commercial activities from their homes. Unlike the cases cited by Defendant, the nature of the obligation at issue, along with the fact that the bill was directed to an individual at a residential address, would allow a reasonable juror to conclude that the "subject of the transaction [was] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

Defendant's motion for summary judgment on this ground is denied.

B. **A reasonable juror could find that AFNI's conduct violated the FDCPA.**

Defendant next argues that even if the FDCPA were applicable, Plaintiff has failed to state a cause of action under Section 1692d or 1692d(5). Def's. Br. at 18. Defendant acknowledges that this Court addressed this issue in its 2016 Opinion, but contends that three courts have analyzed nearly identical facts to those raised in this case since that Opinion was rendered. *Id.* at 18.

Plaintiff responds that his deposition testimony creates a genuine dispute as to the number of phone calls made to his home telephone by Defendant. Pl's. Opp. at 18. Plaintiff argues that the call volume to which he testified, three to four calls a week between October and December 2014, violates Sections 1692d and 1692d(5). *Id.* at 21.

### i. Plaintiff's affidavit creates a genuine factual dispute

As this Court noted in its 2016 Opinion, there is conflicting authority regarding whether a plaintiff establishes a genuine factual dispute as to the number of phone calls by introducing his own testimony when there are contradictory documentary phone records. *See* 2016 Opinion at 7; *compare Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 431 & n.20 (D.N.J. 2013) (plaintiff's repeated statements under oath creates genuine factual dispute as to number of phone calls despite contrary phone records); *with Derricotte v. Pressler & Pressler, LLP*, 10-cv-1323, 2011 WL 2971540 at **3–4 (D.N.J. Jul. 19, 2011) (finding plaintiff's affidavit did not create genuine dispute in the face of contrary phone records). This Court held that it is "inappropriate for a court to . . . make credibility determinations" on a motion for summary judgment, *Big Apple BMW, Inc.*, 974 F.2d at 1363, and accordingly found that a genuine factual dispute existed as to the number of calls.

Defendant urges this Court to reconsider its earlier Opinion in light of three recent district court opinions which have followed the *Derricotte* line of cases. Def's. Br. at 20–21. Defendants point to *Chisolm v. AFNI, Inc.*, No. 15-3625 (JBS/JS), 2016 WL 6901358, at *3 (D.N.J. Nov. 22, 2016), where the court stated: "In this case, Plaintiff's assertions as to the quantity and frequency of calls are supported only by his vague, post-hoc recollections and contradicted by contemporaneous documentary evidence from his own cell phone carrier and from Defendant's contemporaneous telephone logs. Sworn affidavit and deposition testimony, 'without substantive documentation of these phone calls,' will not do." *Id.* (quoting *Derricotte*, 2011 WL 2971540). Defendants contend that this Court should similarly change course and hold that a reasonable jury must find that Defendant called Plaintiff only the ten times reflected in the phone records.

This Court is not persuaded, as it acknowledged and rejected the *Derricotte* approach in its earlier Opinion. An FDCPA plaintiff will rarely be able to produce any evidence besides his own testimony if he believes the phone records are inaccurate. It would be inconsistent with the broad remedial purpose of the FDCPA to prohibit plaintiffs from presenting their testimony as to their version of events.

This Court finds that Plaintiff's testimony is sufficient to create a genuine dispute of fact, even in the face of contrary documentary evidence. *See Rush*, 977 F. Supp. 2d at 431 & n.20.

### ii. Plaintiff has introduced sufficient evidence that AFNI's conduct violated the FDCPA.

Defendant next argues that even believing Plaintiff's testimony, forty-eight phone calls in three months is not a violation of the FDCPA as a matter of law. Def's. Br. at 26. Defendant contends that frequent phone calls do not violate the FDCPA, and that Plaintiff has not presented sufficient evidence of intent to harass, as opposed to a diligent effort to contact a consumer. *Id.* at 27.

Plaintiff responds that call volume alone can violated the FDCPA, and that the Court should defer to a jury to determine whether Defendant acted with the intent to harass. Pl's. Opp. at 21–22.

As this Court stated in its earlier Opinion, "[t]here is no consensus as to the amount and pattern of calls necessary for a court to infer a debt collector intended to annoy, abuse, or harass a debtor." *Turner v. Professional Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 578 (D.N.J. 2013). In addition to the total volume of calls, courts have also looked to other factors such as whether calls were made during working hours, *e.g. Anthony v. GE Capital Retail Bank*, No. 14-cv-2809, 2015 WL 10846141 at *2 (S.D.N.Y. Sept. 30, 2015), or after 9:00 pm at night. *Turner*, 956 F. Supp. 2d at 577. "Courts have also considered whether the defendant actually reached the

11

plaintiff, and whether defendant was asked to stop calling." *Haysbert v. Navient Sols., Inc.*, No. cv 15-4144 PSG (EX), 2016 WL 890297, at *13 (C.D. Cal. Mar. 8, 2016) (citing *Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12–cv–1721–BEN WVG, 2014 WL 1744136, at *4 (S.D. Cal. Apr. 30, 2014)).

Many courts have held that a jury should determine whether a defendant acted with intent to harass by making frequent phone calls as prohibited by Sections 1692d and 1692d(5). As example, the District of Maryland held that the reasonableness of 26-28 calls in a two-month period was a question of fact for the jury. *Akalwadi v. Risk Mgmt Alts., Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004). The court reasoned that evidence of daily phone calls, including calls occurring within five hours on the same day, was sufficient evidence to allow a jury to find an intent to harass. *Id.*; *see also Martinez v. TD Bank UNSA, N.A.*, No. 15-7712 (JBS/AMD), 2017 WL 2829601, at *7 (D.N.J. Jun. 30, 2017) (denying summary judgment because reasonable jury could find that 165 calls over eight months constitute harassment under California version of FDCPA); *Haysbert*, 2016 WL 890297, at *13 (finding triable issue of fact where plaintiff received 99 calls over a one-and-a-half year period, frequently receiving two to five calls per day and answering at least some of the calls); *Turner*, 956 F. Supp. 2d at 578 (reasonable jury could find that 133 calls in five months and multiple messages in one day constitute harassment); *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1164 (N.D. Cal. 2003) (finding 24 calls, and automated calls to plaintiff's residence, allowed jury to find violation of state and federal law). Similarly, the Northern District of California has found that as few as 22 calls in total can be sufficient to state a claim. *See Crockett v. Rash Curtis & Assoc.*, 929 F. Supp. 2d 1030, 1032-33 (N.D. Cal. 2013).

To be sure, some courts addressing the issue have held that the even a "remarkable volume of telephone calls is permissible under FDCPA jurisprudence." *Lightfoot v. Healthcare Revenue Recovery Group, LLC*, No. 14-6791 (JEI/AMD), 2015 WL 1103441, at *3 (D.N.J. Mar. 11 2015) (quoting *Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F. Supp. 2d 694, 707 (D. Minn. 2012)). In *Reed v. IC System, Inc.*, No. 3:15-279, 2017 WL 89047, at *5 (W.D. Pa. Jan 10, 2017), the court found that 125 calls in 135 days did not violate the FDCPA as a matter of law absent evidence of egregious conduct, such as back-to-back calls or calls outside of normal business hours. "Instead, the number of unsuccessful calls over an extended period of time 'suggests a difficulty in reaching [Plaintiff], not an intent to abuse, harass, or annoy[.]'" *Id.* (quoting *Fry v. Berks Credit & Collections, Inc.*, No. 3:11 CV 281, 2011 WL 6057781, at *4 (N.D. Ohio Nov. 17, 2011)); *see VanHorn v. Genpact Servs., LLC*, No. 09-1047-CV-S-GAF, 2011 WL 4565477, at *4 (W.D. Mo. Feb. 14, 2011) (finding 114 calls in four months, placed between 8:00 a.m. and 8:52 p.m. did not violate FDCPA without evidence beyond calls showing intent to harass).

This Court affirms its earlier ruling, and finds that reasonable jury could conclude that AFNI caused Black's phone to ring with the intent to annoy, abuse, or harass. The phone records show that Defendant called Plaintiff outside of business hours, sometimes as early at 7:00 am. In at least one instance, Defendant called multiple times in one day. According to Plaintiff, these calls took place three to four times a week, and at all hours of the day. A reasonable jury could find these phone calls were made with the intent to harass rather than, as Defendant argues, as a "diligent effort to contact a consumer," Def's. Br. at 27.

Defendant's motion for summary judgment on this ground is denied.

## CONCLUSION

Defendant's motion for summary judgment is denied. An appropriate order follows.

DATE: 23 July 2018

William H. Walls
Senior United States District Court Judge